UNITED STATES DISTRICT COURT

DISTRICT COURT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LARRY D. TALLACUS,<br><br>    Plaintiff,<br><br>v.<br><br>KATHLEEN SEBELIUS, Secretary<br>of the Department of Health and<br>Human Services,<br><br>    Defendant. | Civ. No. 11-833-AC<br><br>FINDINGS AND<br>RECOMMENDATION |

ACOSTA, Magistrate Judge:

*Introduction*

Before the court is Defendant Kathleen Sebelius's, Secretary of the United States Department of Health and Human Services, ("the Department") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). The Department moves for dismissal of Claims One and

FINDINGS AND RECOMMENDATION  1            {CKH}

Three[1] filed by Plaintiff Larry D. Tallacus ("Tallacus") under Title VII of the Civil Rights Act of 1964 ("Title VII"). 42 U.S.C. § 2000 (2006). In Claim One, Tallacus alleges that the Department retaliated against him for previously suing the Department by reassigning him to a position without pay equal to his peers, the necessary facilities to perform his duties, and appropriate support. (Complaint ¶¶ 5-26.) In Claim Three, Tallacus alleges that the Department management created a hostile work environment, subjecting Tallacus to abusive and outrageous conduct. (Comp. ¶¶ 33-34.)

The Department argues that Tallacus failed to state a claim of retaliation under Title VII because his reassignment was a promotion, and a promotion cannot be considered an adverse action. (D.'s Mem. in Supp. of Mot. at 2.) The Department also argues that Tallacus has not exhausted his administrative remedies for the hostile work environment claim, and even if he had, he failed to adequately plead that claim by not providing examples of extreme conduct. (Id.) This court finds that Tallacus has pleaded sufficient facts to support the reasonable inference that his reassignment was a materially adverse action. However, the court also finds that Tallacus failed to exhaust administrative relief for his hostile work environment claim. Accordingly, the court has subject matter jurisdiction only over Claim One pursuant to 42 U.S.C. § 2000e-5(f). Thus, the court denies the Department's motion as to the retaliation claim, and grants the Department's motion as to the hostile work environment claim.

---

[1] The Department does not move for dismissal of the Claim Two, for breach of a settlement agreement. (Comp. ¶¶ 27-32.) That October 2000 settlement resulted from a lawsuit Tallacus filed against the Department in 1997. (Comp. ¶ 6.)

FINDINGS AND RECOMMENDATION    2    {CKH}

*Background*

I. <u>Procedural Background</u>

Following the filing of his first lawsuit against the Department in 1997, Tallacus and the Department entered into a settlement agreement in 2000. Per that agreement, the Department gave Tallacus the position of Contract Health Service Officer ("CHSO") with his employer Indian Health Service ("IHS"), an agency within the Department. (Comp. ¶ 8.)

Tallacus brought a second lawsuit in 2008, alleging six claims against the Department after the IHS administered a Reduction in Force ("RIF") action that demoted Tallacus from the position of CHSO to Account Technician. (Comp. ¶ 14.) All of Tallacus's claims were dismissed on the pleadings or at summary judgment, except for his retaliation claim, which proceeded to trial. A jury returned a verdict against Tallacus on the retaliation claim and the court denied his motion for a new trial. Tallacus has filed a timely appeal of that ruling.

While his second lawsuit was pending, Tallacus brought a third lawsuit against the Department in 2010, in the United States Court of Federal Claims. He alleged that the Department had breached the 2000 settlement agreement, resulting in $100,000 in damages. (Comp. ¶ 19.)

II. <u>Factual Background</u>

These facts are taken as true from the complaint in question.[2] The IHS has employed Tallacus for over twenty years. (Comp. ¶ 6.) On July 4, 2010, Tallacus resumed the position of CHSO in the Department's Portland Area Office, after working as an Account Technician for about

---

[2] The court accepts all material allegations in the complaint as true and construes them in the light most favorable to the Tallacus. *N. Star Int'l v. Arizona Corp. Comm'n.* 720 F.2d 578, 580 (9th Cir. 1983). For reasons discussed in detail below, the court considers two documents, Tallacus's Formal Complaint of Discrimination and the IHS Final Agency Decision on that action, to be intrinsic to the complaint filed in this case.

FINDINGS AND RECOMMENDATION        3                                {CKH}

three years. (Comp. ¶¶ 14, 20.) Tallacus started in this new position after receiving notification of the transfer two days earlier. (Comp. ¶ 21.) Tallacus has fully performed the duties assigned to him since assuming the CHSO position, and his evaluations have all been satisfactory. (Comp. ¶ 22.)

Shortly after Tallacus sued the Department in the United States Court of Federal Claims in May of 2010, the IHS informed Doni Wilder ("Wilder"), then Portland Area Director, about the lawsuit. (Comp. ¶ 19.) Wilder instructed Sharlene Andrew ("Andrew"), Tallacus's supervisor, to prepare the position description for his new position of CHSO. (Comp. ¶ 20.) Andrew signed off on that description on June 10, 2010, assigning Tallacus a pay-grade of Health System Specialist, GS-671-11. (Comp. ¶ 20; James E. Cox Declaration, Ex. 2 at 5.) Wilder also assigned Tallacus a cubicle instead of a private office in IHS's new office space.[3] At that time, the agency's relocation was scheduled for August 2010.

Before the move, Tallacus requested a private office with a locking file cabinet in the new office space because a cubicle lacked privacy necessary for storing medical files, as required by the Health Insurance Portability and Accountability Act ("HIPAA"). (Comp. ¶ 23.) Andrew, to whom Tallacus made the request, informed Wilder, who denied or ignored it. (*Id.*) After Tallacus moved into the cubicle in the new office, he again requested a locking file cabinet to hold the medical files for which he was responsible. (*Id.*) To this date, Tallacus has not received a locking file cabinet. (*Id.*)

Around March 2011, Leslie Dye filed a complaint with IHS that Tallacus had not properly

---

[3] It is not clear from the complaint exactly when Wilder made the decision to assign Tallacus a cubicle, or whether she made that decision before or after learning about Tallacus's lawsuit. The complaint does state that IHS made plans to move during the first half of 2010. (Comp. ¶ 18.)

FINDINGS AND RECOMMENDATION    4    {CKH}

secured medical files and was in violation of HIPAA. (Comp. ¶ 24.) In response, IHS proposed to suspend Tallacus for two weeks, or indefinitely, without pay. (*Id.*) Dye filed a second complaint against Tallacus, informing Andrew that Tallacus was rude and unprofessional when she greeted him. (Comp. ¶ 25.)

Within forty-five days of his transfer to the CHSO position, Tallacus contacted an Equal Employment Opportunity ("EEO") counselor, and filed a formal individual complaint for employment discrimination in September 2010. (Comp. ¶ 2(b); Cox Decl., Ex. 2 at 1.) In this complaint, Tallacus stated his position: "I was not restored to my former CHSO/CHS Consultant duties, but rather transferred to a newly developed CHSO/CHS Consultant position description, and kept at a lower grade than other like CHSO/CHS Consultant positions across the nation, and I view this as further retaliation." (Cox Decl., Ex. 2 at 5.) Tallacus further alleged that this recent reassignment placed him at a lower pay-grade than his co-workers who received pay-grades of GS-12 and O-6 when they assumed his CHSO position after his demotion to Account Technician in 2007. (Cox Decl., Ex. 4 at 4.)

As a remedy for alleged discrimination, Tallacus requested a pay-grade of GS-12 with a promotion ladder to GS-13 (the same position description that is provided on IHS headquarters' Contract Health Service website), a private office, staff assistance, and supervisory authority over Puget Sound Operations. (Dec. of James E. Cox, Ex. 2 at 3.) The Department accepted the complaint on October 4, 2010, and after conducting an investigation into the allegations, produced a Report of Investigation. (Comp. ¶ 2(b).)

The IHS issued a Final Agency Decision on Tallacus's complaint on April 15, 2011, finding that his reassignment to CHSO had not been an act of discrimination. (Cox Decl., Ex. 4 at 1.) In

its decision, the Department found that Tallacus was a member of a protected group because of his prior participation in the EEO process,[4] but he was not subjected to an adverse employment action because his reassignment was a promotion. (Cox Decl., Ex. 4 at 5.) In the investigation of this complaint, Wilder explained that she had reassigned Tallacus to respond to an increased workload in the Business and Health Programs Office. (*Id.*) However, Wilder reported that Tallacus's new position "did not warrant a GS-12 because the work was more conventional, less complicated, and the assignments were better defined." (*Id.*) She added that "the level of responsibility did not warrant a GS-12 because decisions are not based on controversial or difficult matters and are, therefore, less authoritative." (*Id.* at pages 5-6.)

*Preliminary Procedural Matter*

The court considers two exhibits, mentioned in the complaint but filed afterwards, as *intrinsic* to the complaint: 1) Tallacus's Formal Complaint of Discrimination, and 2) the Final Agency Decision on Tallacus's Formal Complaint of Discrimination. (Cox Decl., Ex. 2, 4.)

A trial court may consider documents not attached to the pleading *as part of* the complaint when deciding a motion to dismiss if the complaint specifically refers to those documents and neither party questions their authenticity. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citation omitted). Additionally, "[w]hen the plaintiff fails to introduce a pertinent document as part of his pleading, the defendant may introduce the exhibit as part of his motion attacking the pleading." *Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1993), *overruled on other grounds as stated in Galbraith v. County of Santa Clara*, 307

---

[4] This was not Tallacus's first administrative employment complaint. Tallacus initiated a claim through the Merit System Protection Board in 2007 after the Department demoted him to an Account Technician position through a RIF process. (Comp. ¶ 15.)

F.3d 1119 (9th Cir. 2002)).

In this case, the Department attached Tallacus's Formal Complaint of Discrimination and the Final Agency Decision to its memorandum in support of the motion to dismiss. Tallacus did not object to the inclusion of these documents in the pleading. The court notes that Tallacus explicitly referred to both documents by name in his complaint. Furthermore, the content of the administrative complaint and resulting agency decision directly affect the legal sufficiency of Tallacus's claims – specifically, whether he has exhausted avenues for administrative relief. Tallacus cites these documents to claim this court has jurisdiction pursuant to 42 U.S.C. § 2000e-5(f). For these reasons, and because neither party challenges the authenticity of these documents, the court considers the content of these two filings as intrinsic to the complaint.

## *Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which relief can be granted. After the United States Supreme Court's ruling in *Ashcroft v. Iqbal* ("*Iqbal*"), 129 S. Ct. 1937 (2009), "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" 129 S. Ct. at 1949 (emphasis added) (quoting *Bell Atlantic Co. v. Twombly* ("*Twombly*"), 550 U.S. 544, 570 (2007)).

In *Iqbal*, the United States Supreme Court laid out a two-step approach to assess the facial plausibility of the factual content in the pleading. 129 S. Ct. at 1950. First, a court should identify the parts of the "pleading that, because they are no more than conclusions, are not entitled to the assumption of truth." *Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) (citing *Iqbal*,

129 S. Ct. at 1950). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, a court should assume the veracity of well-pleaded factual allegations and determine whether they support a plausible claim for relief, and not merely a possible claim for relief. *See id.* A complaint falls short of the line between possibly and plausibly demonstrating entitlement to relief when it contains only facts that are "merely consistent with a defendant's liability." *See* Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

*Iqbal* and *Twombly* reemphasized precedent that a pleading consisting *only* of legal conclusions will not satisfy the pleading standard.[5] At the same time, "pleadings should not be found deficient even if it is apparent 'that a recovery is very remote and unlikely.'" *Moss*, 572 F.3d at 968 (quoting *Twombly*, 550 U.S. at 546). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences for that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1949).

*Discussion*

I.   Retaliation Claim

The anti-retaliation provision in Title VII protects an employee's right to complain about acts of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The provision states, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment

---

[5]   "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

FINDINGS AND RECOMMENDATION   8   {CKH}

practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e-3. To make out a cognizable claim for relief, Tallacus must establish that he undertook a protected activity under Title VII, the Department subjected him to an adverse employment action, and there is a causal link between those two events. *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003) (citations omitted).

As an initial matter, the court concludes that only some of Tallacus's employment history with the IHS, prior to his reassignment to the CHSO position in 2010, is relevant to his retaliation claim in this case. The Department argues that the Tallacus cannot base his retaliation claim on the IHS's administration of a RIF in 2007, which resulted in Tallacus's demotion to the Account Technician position, because he sought relief for that allegedly adverse action in his 2008 lawsuit. (Mem. in Supp. of Def.'s Mot. to Dismiss at 7.) Because a jury has already delivered a verdict on Tallacus's retaliation claim stemming from the RIF, Tallacus must state sufficient facts that an actionable adverse action other than the RIF is the basis for this retaliation claim. However, the court will consider Tallacus's complaint through the Merit System Protection Board following the RIF in assessing whether Tallacus engaged in a protected activity. The Merit System Protection Board complaint is still relevant here because Tallacus filed it after the RIF; thus, it could not have served as the alleged motivation for retaliation in Tallacus's 2008 suit, and is part of the ongoing relationship between Tallacus and his IHS supervisors.

A.   *Protected Activity*

Tallacus identifies his 2010 lawsuit in the United States Federal Court of Claims as the motivation for the Department's alleged retaliation against him. In general, "protected activity

includes opposing a practice reasonably believed to be unlawful, including making an informal complaint to a supervisor." *Alvarado v. Fed. Express Corp.*, 384 F. App'x 585, 589 (9th Cir. 2010) (citing *White*, 548 U.S. at 59.) The Ninth Circuit has recognized lawsuits filed against a defendant employee as protected activity under Title VII.[6] *See, e.g., Thomas v. City of Beaverton*, 379 F.3d 802, 806, 811-12 (9th Cir. 2004) (holding that plaintiff satisfied the "protected activity" requirement by alleging that the City retaliated against her because she obtained a favorable jury verdict in her racial discrimination suit). In addition, Tallacus's pleading references his complaint with the Merit System Protections Board in 2007 as an incident leading up to his reassignment to the CHSO position. The Department even named Tallacus in its Final Decision on his 2010 EEO complaint as a "member of a protected group" because of this prior 2007 complaint. The court concludes that Tallacus's history of EEO activity and opposition to the Department's alleged breach of his settlement contract with a lawsuit in federal court are sufficient facts to demonstrate that he engaged in a protected activity pursuant to 42 U.S.C.A. § 2000e-3.

B.  *Adverse Action*

The Department argues that Tallacus cannot state a cognizable retaliation claim because the Department did not subject him to an adverse employment action, as is necessary to be entitled to relief under Title VII. (Mem. at 2.) More specifically, the Department contends that Tallacus's reassignment to the CHSO position in 2010 was not materially adverse because it was a promotion – Tallacus gets paid more in his current position as a CHSO than he did as an Account Technician.

---

[6] Although it is uncommon for a lawsuit brought outside of the EEO to serve as a retaliation plaintiff's protected activity, Title VII's anti-retaliation provision seeks to prohibit "employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' *the courts*, and their employers. *White*, 548 U.S. at 68 (emphasis added) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)).

FINDINGS AND RECOMMENDATION    10    {CKH}

(Mem. at 7.) The Department also argues that the surrounding and subsequent circumstances of that reassignment – the transition period between jobs, and the lack of a private office and filing cabinet for the CHSO position – did not rise to the level of *adverse* because they did not interfere with Tallacus's ability to perform the duties of his new job. (Mem. at 8.)

This court finds that Tallacus states a plausible allegation of adversity to satisfy the second requirement of his retaliation claim. The United States Supreme Court has held that the anti-retaliation provision of Title VII covers only those employer actions that would have been materially adverse to a reasonable employee and "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[7] *White*, 548 U.S. at 54 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (2006)).

There is no categorical rule that job transfers that result in an increase in pay are not actionable adverse employment actions. On the contrary, *White* dictates against creating categories of materially adverse actions. The Court instructed: "[T]he significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69. Under the law in this circuit, transfer to another job of the same pay and status may constitute an adverse employment action. *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000); *Yartzoff v. Thomas*, 809 F.2d 1371, 1375-76 (9th Cir. 1987); *St. John Emp't Dev. Dept.*, 642 F.2d 273, 274 (9th Cir. 1981). Thus, a promotion to another job but at a rate of pay lower than that afforded to others in the same position can constitute an adverse action. Similarly, promotion while denying the employee the resources or support given to others to perform the job also can be an adverse action.

---

[7] With this holding, the Court settled the circuit split on this issue, agreeing with the Seventh and District of Columbia Circuits. *White*, 548 U.S. at 54.

FINDINGS AND RECOMMENDATION 11 {CKH}

There are sufficient facts in the pleading to support Tallacus's claim that his reassignment to CHSO suffices as the adverse action here. The most compelling factor of adversity in the pleading is the "lack of appropriate grade" (pay grade) that he received in his new position. (Comp. ¶ 2(a).) His formal complaint with EEO elucidates that plain statement: "I was . . . kept at a lower grade than other like CHSO/CHS Consultant positions across the nation." (Cox Decl., Ex. 2 at 5.) The consequence of disparate pay from job transfers or even promotion could dissuade the reasonable worker from opposing unlawful actions by his employer. As stated before, the particular circumstances impact the significance of the employer's act: "[a] supervisor's refusal to invite an employee to lunch is normally trivial . . . [but] excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee." *White*, 548 U.S. at 69. It follows that a reassignment that payed Tallacus less than similarly situated employees in the Department plausibly constitutes a materially adverse action under Title VII.

Moreover, Tallacus claims that the reassignment resulted in a lack of meaningful transition, appropriate facilities, and support. (Comp. ¶ 2(a).) The Department argues that this void did not prevent Tallacus from completing his job, pointing to his admission that "from July 4, 2010, to the present, Tallacus has fully performed his duties." (Comp. ¶ 22.) The Department also argues that not having a private office or a locking cabinet would not deter an employee from engaging in protected activity. (Mem. at 8.) Again the court disagrees. It is plausible that a reasonable employee would be deterred from taking action that would expose him to HIPPA violations if that employee was in charge of medical files subject to HIPPA. In fact, according to Tallacus's complaint, after he moved to the cubicle without a locking file cabinet a fellow employee, Leslie Dye, lodged a

complaint against him for a HIPPA violation. (Comp. ¶ 24.) Tallacus supports his conclusion that the absence of a locking filing cabinet was adverse by pleading the fact that he twice requested one from his supervisor, Andrew. (Comp. ¶ 23.)

  C. *Causal Link*

Finally, the complaint's factual allegations relating the reassignment to Tallacus's EEO activity and his lawsuit complete the picture of a plausible retaliation claim. On May 24, 2010, Tallacus brought a lawsuit in the United States Court of Federal Claims; on July 4, 2010, Wilder reassigned Tallacus to the CHSO position. Tallacus also pleads in his complaint that IHS informed Wilder of that lawsuit shortly after he filed his claim. (Comp. ¶ 19.) The Ninth Circuit has recognized that "causation can be inferred from timing alone where an adverse employment action follows on the heels of the protected activity." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)). Accordingly, the Ninth Circuit has found prima facie cases of causation when an employer took the adverse action fifty-nine days and more than two months after the protected activity. *Id.* (citing *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir. 1989) (fifty-nine days); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (more than two months)). Tallacus's reassignment was sufficiently proximate as it happened forty days after he sued the Department, well within the range the Ninth Circuit has recognized as sufficient to support a causal link.

The Department contends that it did not place Tallacus into the CHSO position due to the litigation and referenced the finding of legitimate reasons for the reassignment in the Final Agency Decision of Tallacus's EEO complaint. The Department justified the reassignment as a response to a workload increase in the Business and Health Programs Offices. (Cox Decl., Ex. 4 at 5.) It claims

that the increase did not produce enough work to support a full-time employee equivalent, however. (*Id.*) "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr*, 652 F.3d at 1216. "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Id.* The Department does not argue and the Final Agency Decision does not provide how much, or what kind of additional work, resulted from the increase to meet the implausibility test. Consequently, taking as true the allegation that the Department instituted this reassignment only forty days after Tallacus filed the lawsuit, the court finds that Tallacus plausibly states a cognizable claim.

### D.   *Exhaustion of administrative remedy for retaliation claim*

The Department contends that a retaliation claim based on the alleged adverse action of not affording Tallacus a private office or locking cabinet is not cognizable because Tallacus failed to exhaust his administrative remedies for these allegations before filing this lawsuit. (Mem. at 8-9.) Under Title VII, a plaintiff must exhaust his administrative remedies by filing a timely charge with the EEOC, and allowing the agency an opportunity to investigate the charge. 42 U.S.C. § 2000e-5(b). "Even when an employee seeks judicial relief for claims not listed in the original EEOC charge, the complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (internal quotations omitted).

"Subject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably*

*be expected* to grow out of the charge of discrimination." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (internal quotations omitted). In determining whether Tallacus has exhausted allegations that he did not specify in his administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. *Id.*

The court finds that Tallacus has exhausted his administrative remedies for his allegation that the Department took adverse action against him by not providing a secure work area for his HIPPA files. The Department is correct that Tallacus's September 2010 EEO complaint focused on his pay grade resulting from the reassignment. However, Tallacus mentions the need for a "private office necessary to accomplish CHS Consultant duties," in the remedy description of his complaint. (Cox Decl., Ex. 2 at 3.) This factual allegation is reasonably related to basis of his administrative complaint because it underlies the same legal theory of retaliation as the allegedly unfair pay grade. See *B.K.B.*, 276 F.3d at 1100 ("[T]he court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.") Additionally, Tallacus alleged that the Department was motivated in both actions by his civil lawsuit and past EEO activity, and all his allegations of adverse action in his complaint involved the same management personnel, Wilder and Andrew. Finally, the reasonable investigator would have read Tallacus's entire complaint, seen his mention of a need for a private office, and inquired about that necessity. Accordingly, the court has subject matter

jurisdiction over all Tallacus's retaliation claims.[8]

II.   Hostile work environment

The court agrees with the Department that Tallacus failed to exhaust his administrative remedies for the hostile work environment claim. The Ninth Circuit found in *Keach v. Henderson*, 83 F. App'x 859, 860 (9th Cir. 2003), that despite the circuit's lenient treatment of administrative exhaustion, the plaintiff failed to satisfy the requirement because his EEOC complaint only detailed a single incident and attributed it to gender discrimination. *See also Hurst v. City of L.A.*, 171 F. App'x 103, 104 (9th Cir. 2006) (internal quotations omitted) ("Where a plaintiff alleges a distinct category of discrimination in his EEOC charge, a separate claim which was not raised during the administrative process must be dismissed.") Similarly, Tallacus's administrative complaint does not name a claim of hostile work environment or the underlying substance of such a claim. It described only the incidents of July 2, 2010 when he was notified of his reassignment to the CHSO position. (Cox Decl., Ex. 2 at 5.) He concluded the complaint by opining that the incident was "further retaliation." *Id.* As in *Keach*, Tallacus limited his complaint to a single incident and did not claim any factual or legal allegations of any ongoing abusive or outrageous conduct by Wilder, Dye, Andrew, and Dean Seyler, that he now generally pleads in this lawsuit. (Comp. ¶ 34.) In response to his EEO complaint, the Department considered Tallacus's allegations under a theory of discrimination through retaliation, and the Final Agency Decision does not show any evidence of investigation into ongoing claims of abusive or outrageous conduct by Department management.

---

[8] The Department finally argues that Tallacus cannot allege his potential three-day suspension as an adverse action because he did not exhaust administrative remedies for that allegation. The court does not address this argument because Tallacus does not appear to claim in the complaint that this action was part of the Department's retaliation.

FINDINGS AND RECOMMENDATION   16   {CKH}

In accordance with the Ninth Circuit's finding in *Keach*, this court does not have jurisdiction over Tallacus's hostile work claim for his failure to first pursue administrative relief.[9]

### Recommendation

Tallacus has alleged sufficient non-conclusory facts to plausibly suggest an entitlement to relief under the anti-retaliation provision of Title VII, but has failed to exhaust administrative remedies for his hostile work environment claim. Based on the foregoing conclusions, I recommend that the Department's motion to dismiss (Docket #6) be GRANTED with prejudice as to Claim Three in the complaint and DENIED as to Claim One.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due February 29, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 15th day of February, 2012.

JOHN V. ACOSTA
United States Magistrate Judge

---

[9] The court does not reach the Department's other argument against the hostile work environment claim (that Tallacus failed to allege conduct that is sufficiently severe or pervasive to alter the conditions and terms of his employment) because it does not have jurisdiction over the claim.